The appellant we have Brian Kalb for the affiliate, Nicholas Tinsman. Mr. Kalb, you may proceed. Thank you, Your Honor. Good afternoon. May it please the Court. Again, Your Honor, my name is Brian Kalb. I represent Todd and Danetta Ballye. They are homeowners in the Coupon County and were brought into a lawsuit by the Illinois Department of Transportation by a complaint filed by them pursuant to the Illinois Imminent Domain Act. The Ballye's raised two issues in their briefs and on appeal. The first is whether the circuit court erred in granting IDOT's motion for immediate vesting of title under the Illinois Quick Take Statute. And second is whether the circuit court erred in granting IDOT's motion for immediate vesting of title, which I will, throughout these arguments, we will just refer to it as the motion. When there was no evidence of good faith negotiations at the evidentiary hearing, my opponent, my opposing counsels filed a cross-appeal on that issue, arguing that the court's sustainment of an objection based on hearsay was an error. Your Honor, I'm going to concede that that issue and withdraw my second point on appeal, leaving the only point on appeal whether or not the court erred in granting the motion. Is that fine with you? Yes. So you're no longer taking the position that the 60-day letter... That is correct, Your Honor. I'm no longer... I'm abandoning my argument that there was no good faith negotiation, and I'm conceding their argument that the hearsay objection should have been... Overruled. So the only issue before the court is whether or not the motion contained the statutorily sufficient information, and I will argue that it did not. Just by way of background, Your Honors, IDOT filed its complaint for condemnation in the motion on the same date, April 27, 2017. IDOT sought to condemn .69 acres of the Bailey's Homestead as part of IDOT's high-speed rail project going through the Bunker Hill road crossing in Macoupin, Illinois. My client was served, my clients were served on May 9, 2017, and the hearing on the motion was held on May 17, 2017. The court held a hearing, and prior to the hearing, I filed a response to the motion. And I objected, or my clients objected to the motion because the motion did not state the formally adopted schedule or plan of operation for the execution of IDOT's project pursuant to 735 ILCS 30, Section 20-5-5, Subsection B. The court proceeded over my client's objection and heard IDOT's witnesses on the motion. Following the evidentiary hearing, the court requested additional briefing on the issue raised in the Bailey's response. And in order of granting the motion on May 23, 2017, the Bailey's filed this introductory appeal. So, Your Honor, given that this case is only on appeal on one very narrow issue, I don't expect this to take long. The statute requires, when I say the statute, I'm referring to Section 20-5-5 of the Imminent Domain Act, titled Quick Take. It allows the state to proceed to acquire title to any section of a person's private property that it deems necessary for a project under Section A. And it allows, under Section B, that the motion, which would be filed to acquire immediate vesting of title, says the motion for the taking shall state, Part 2, it shall state the formally adopted schedule or plan of operation for the execution of the plaintiff's project, in this case the high-speed rail project, and 3, the situation of the property to which the motion relates with respect to the schedule or plan. The last sentence of this particular section states that if the schedule or plan of operation is not set forth fully in the motion, a copy of the schedule or plan shall be attached to the motion. So, Your Honor, the evidentiary hearing, I'm sorry, the motion that IDOT filed contains four sentences. And the only reference to anything relating to the nature of the acquisition of my client's property is that they say the plaintiff has adopted a schedule, which calls for the acquisition of these and other parcels of land in Macoupin County, Illinois, in the construction of a proposed improvement in calendar year 2017. So, they reference the adopted A schedule, but don't say what that schedule is. And it says that it is necessary to acquire the parcel sought to be acquired in plaintiff's complaint hearing in order to prepare the site for the project's main construction. It cites my client's parcel being relevant for the construction. And it says further delay in acquisition of said parcels will delay the construction improvement of FAS 736, which it doesn't state what that is, and will jeopardize the acquisition and construction schedule of the plaintiff. This, in turn, will result in increased construction costs and delay in the elimination of traffic hazards, which will be remedied by the proposed improvement. Now, was there a diagram attached to the motion? Yes, Your Honor. So, the statute requires that IDOT, with their submission of the motion, provide an accurate description of the property to which the motion relates, and the estate or interest sought to be acquired. So, the statute requires IDOT, the condemning body, to state three things, actually four things. The first is the legal description of the property. The second is state the formally adopted schedule or plan of operation. So, they did comply with the first part by identifying this, specifically the property to be taken. But, Your Honor, my contention was that the trial coordinate is here, that the motion that I just recited to you does not contain the formally adopted schedule or plan of operation for the execution of the plaintiff's project. Now, at the evidentiary hearing, the IDOT submitted to the court, as its first exhibit, the construction plans. It submitted those in Evidence Exhibit 1. Those are approximately 25 pages long. I believe there's some argument in the briefs that said it's not practical or feasible for the condemning body to have to submit either state formally in the motion or attached to the motion itself, the construction plans, because it would be too voluminous. But the first exhibit in this case was simply 25 pages of plans. And I don't believe based on even the evidence. Now, my argument is based on law, looking at the statute and the motion. But I think even if we look at Exhibit 1, supplied by IDOT into these proceedings, no one can say it was too voluminous to simply attach to the motion. So, Your Honor, my contention, or the Bailey's contention, is the motion does not comply with the statute for the reasons stated. The only case that I could find on this, well, I found no case articulating, interpreting what it means to have a formally adopted schedule or plan. What does that mean? There is a case called City of Chicago v. St. John's United Church of Christ. It's a Second District case from 2010. And in that case, the City of Chicago was condemning some properties for the expansion of the O'Hare Airport. And one of the properties being condemned was a church. Next to the church was a cemetery. And the City of Chicago wanted to relocate and exhume the bodies to another location, which led to a very interesting fact pattern in the case. But one of the arguments raised by the landowners and those interested in the deceased was whether or not there was a formally adopted schedule or plan with the motion, submitted with the motion. The court stated that this language of the statute is unambiguous. And that in this case, the Chicago case, the motion contained a scheduled start and end date, as well as referencing a specific project. And it looked like the case doesn't say what the City of Chicago's motion actually provided. It doesn't say. It looked like there was a dispute. The fact that the City of Chicago referenced that it was asking for quick-take authority for the entire O'Hare modernization program, as well as the authorization to construct a new runway. And there was some dispute whether or not which project applied to the land being taken from the cemetery and whether or not there was stated with specificity the project or plan associated therewith. The court said that, in review of the motion, that the City provided a specific timeline, a start date and end date, for the specific project, the O'Hare expansion project, that affected the property in question. The court said, we determined that there has been sufficient compliance with Section 20-5-5-B, the statute that's involved in this very case. Your Honor, even under that vague reference to what was provided in the motion, again, it's not stated in the case exactly what was in the motion that the City filed, there's no start or end date for this particular project. And I don't believe there's any kind of statement as far as what the project is. And Your Honor, I actually somewhat take issue, somewhat I do, I take issue with kind of the holding in the City of Chicago v. St. John case because the statute specifically says that the motion must state the formally adopted schedule or plan of operation for the execution of the plaintiff's project and the situation of the property to which the motion relates. If it's not referenced within the motion itself and it's not set forth fully, that is, the statute says that if the schedule or plan of operation is not set forth fully, so there's some contemplation that a plan or schedule is with the motion or in it, a copy of the schedule or plan shall be attached to the motion. So I think it's more broad. The statute's asking for more than just a reference to a start date, a reference to an end date, and a statement as to what the project is, like the O'Hare modernization project, or in this case a high-speed rail project. But I don't even believe the motion even said high-speed rail. So I believe that the statute requires more because of the public policy involved. When the State of Illinois or any condemning authority seeks quick take of a person's property, it's an extreme remedy that the State has to actually take a person's private property. And they can do so with very little notice of the property owner. In this case, my client was served on May 9th. His property was taken on May 17th. So there's not much time for a property owner to prepare in the defense of the motion. I believe that the public policy requiring the State or the condemning authority to provide certain information within the motion itself is because of the short lag time between the filing of the motion and the court's order taking property. It gives property owners some idea of what's at stake at the hearing. Like for example, in this case, I attended the hearing and I was handed the construction plans. They weren't attached to the motion. I assume that the General Assembly were granting property owners some notion of due process, that as part of the process that they recognize in this case is that we're going to make the condemning party provide, at a minimum, the formally adopted schedule or plan of operation for this particular project. Well, Counsel, that brings me to something that I began to wonder about in reviewing this matter. Do we need to undergo a mandatory versus directory analysis in this case? I mean, there's nothing in the statute that talks about what happens if they don't comply. There's nothing indicating, well, if they don't comply, then they don't get to take your land. Your Honor, the statute provides that it shall, that the condemning property shall. So if they don't, then I believe that their motion should be denied. But then there's this notion that if it says shall, but does not outline a consequence for failure to comply with that, that there's an assumption that it may be directory. Well, Your Honor, given what I believe to be the public policy behind the statute, I would contend that the provision in here requiring a condemning party for a quick take provide the land on this information, that it is mandatory, that it's not up to the condemning party's discretion. It would be completely prejudicial for the condemning party to simply overlook the requirements of the statute and then say, well, this is harmless error, or there's no prejudice. I mean, like I said, the hearing's going to take place in these types of proceedings within 10 days. So, Your Honor, it's always, oh, I'm sorry. No, go ahead. As a practical matter, if it's discretionary, if the court considers it not mandatory, and if the court says, well, if it wasn't supplied, then it's not immediately denied that there's going to be some subsequent analysis on whether there's a prejudicial effect, whether the error's harmless. Well, thanks to where I was going with this, it seems to me you could do a motion to dismiss because the proper attachments were not filed along with the motion, and then the court might say, yeah, the motion's going to be dismissed for now with leave to refile with the proper attachments, thereby putting you on notice at the hearing exactly what it is you're dealing with. And I moved. I responded and asked the court to deny the motion because the proper material was not supplied in compliance with the statute. So you're saying the court could have said dismiss with leave to refile with the proper attachments? Right. It's just a motion for immediate vesting of title if the motion is denied. I assume that could be refiled the next day to correct the error. But from a landowner's point of view, if the motion is granted despite the failure to comply with the statute, each landowner is going to have a terrible time showing prejudice at the time of hearing because it's hard to prove a negative. I wasn't supplied the information. Therefore, I can't even scrutinize what it is that I claim was not provided. So, Your Honor, if there's no further questions on this point, I will conclude and turn it over to my esteemed colleague. All right, counsel. I don't see any questions, but you will have rebuttal. Thank you. Mr. Tinsman. Thank you, Your Honors. May it please the Court. As previously stated, Your Honors, my name is Nicholas Tinsman. I'm here representing the Illinois Department of Transportation on behalf of the Illinois Attorney General's Office. And the matter before this Court now is whether or not the motion for quick take contained the statutorily required documentation to satisfy the statute. And the opposing counsel has already recited the statute and what it must state. And so I will just refer to our motion. It's our position that the motion for immediate vesting of title did comply with the statutory requirements. It did state a plan, a schedule, and the method in which the particular partial played into that plan. And as you'll see in the motion itself, it says that the plaintiff has adopted a schedule for acquisition of the partials of land in Macoupin County, Illinois, in the construction of the proposed improvement in calendar year 2017. Calendar year 2017 is a defined period of time. It's not ambiguous. It's not uncertain. It's at most 12 months and could be as little as one day if we're at the end of the year. But we're saying that the plan is that has been adopted to complete these improvements in calendar year 2017. Normally, if these types of cases are going to extend many years, as did the City of Chicago v. St. John's case, it would state we're going to start construction in said year and we hope to continue in or to be completed by 2018, 2019, whatever that might be. And when we're drafting these motions, we ask those questions. What's the time frame? The time frame is the year 2017. So we put in the adopted schedule for 2017. This particular partial, it's important to note, this is a permanent easement that we're taking here. We're not taking fee simple. We weren't building a roadway on the defendant's property. We weren't doing anything like that. We're doing a permanent easement in this case. And what we said in the motion was that it's necessary to acquire this permanent easement in order to prepare the sites for the project's main construction. And the project's main construction is, as our opposing counsel stated, FAS 736, which in parentheses in the motion, it states the Brighton Bunker Hill Road. That's the construction project that we're dealing with in this particular partial. This partial sits adjacent to Brighton Bunker Hill Road, and it's necessary to move Brighton Bunker Hill Road a little bit to the east, as was testified to in the QuickTake hearing, and that moves the right-of-way a little bit or the easement area a little bit to the east as well. And so that's all we're doing. The roadway is contained within the existing road right-of-way that was there before, but now our easement area has to extend a little bit to the east as well. And so I think he stated it was 0.69 acres, and it was just a very small sliver of a driveway that is now going to be part of the easement because the roadway was moved. Counsel, you said 0.69. I think it was actually 0.06. I think you're right, Your Honor. It was very, very small. It was 0.6, 0.7 of an acre. That's correct. And then our motion also states that it's necessary for this permanent easement for the construction and improvement of Brighton Bunker Hill Road. And then we go on to talk about the inability to negotiate an agreement, which has been conceded. So if you look at the landmark case in this matter, which I agree with opposing counsel, City of Chicago v. St. John's is very factually similar and can be useful here. In that case, the City of Chicago said that it's necessary for, among other things, to build a new runway. And in that case, they did have a two-year period where it said it would begin in July of 2010 with a completion in 2012. So that obviously spanned more than one year, which was just factually distinct in that case. So in that case, the city provided a specific timeline. Here's the beginning point. Here's the end point. And a specific project, they said, to build a new runway. In our case here, we have said calendar year 2017. That's from January 1 to December 31. That's our calendar year. We intend to have this done by the end of 2017. And the purpose is to prepare the site for the project's main construction. And it's necessary for the construction and improvement of Brighton Bunker Hill Road. So the main project is Brighton Bunker Hill Road. This permanent easement is necessary to prepare that site for the construction and to finalize that construction. So we relate to how this particular partial plays into the main construction as required by the statute. And we give a defined period of time, calendar year 2017. Now, opposing counsel is correct. There is a short period of time between the time that the statute allows for a motion for a quick take hearing and a quick take hearing to take place. But that should go to tell you that the purpose of the quick take hearing is not for the defendant to scrutinize the plans. There's no way you can do that in that 10-day period. The plans that are adopted by the Illinois Department of Transportation are not at all at issue in a quick take hearing. That's not what we're discussing. We're not discussing about, well, do they need .069 acres or do they need only .062 acres? Those types of evidentiary issues are not decided in a quick take hearing. All that's decided in a quick take hearing is preliminary just compensation for what we say we need. And then later on we can have a hearing before final compensation is determined about the propriety of the taking, about whether it's necessity for a public purpose, all those things that they're allowed to bring up by way of their traverse. Those things can be heard at a different time. But the purpose of the quick take hearing is simply to tell the court, we have an adopted plan, a proposed plan and a schedule. Here it is. Here's how we acquired our compensation. We put it on the appraiser. They testify as to the appraised value of the property that's being taken. And the court is setting preliminary just compensation in order of vesting title. So in this case, attached to our motion for immediate vesting of title was, as opposing counsel mentioned, a legal description, as well as the permanent easement plat that came from the project plans that were adopted by the Illinois Department of Transportation. And those were attached. They show the location of the proposed permanent roadway easement. It's all right there. There's no confusion as to what portion of the property we're taking or what we're doing with it. It states it's a roadway easement. And I think all of these things comply with the holding in the city of Chicago case that basically they said that the city had provided a specific timeline for the project and they had determined that there had been sufficient compliance with the section and that the vesting of title by quick take was proper. They go on to say plans for a massive project such as the O'Hare, you know, from Chicago to St. Louis aren't going to be attached to every single quick take motion that we make in every single court. Exhibit 1 that was attached even to the quick take hearing in this case that was admitted into evidence is just from a particular mile marker to another particular mile marker the plans for this portion of that project. You're not going to see anything from the city of Chicago to St. Louis in Exhibit 1. It's just the plans for this particular portion of the project. And we admitted those into evidence. Counsel, I'm not sure I understood your argument from a couple of minutes ago. It sounded like you were saying the purpose of the hearing was for the fixing of just compensation, but you also asked for and received the vesting of title, didn't you? Yes, we did. That's correct. So there are two purposes for the hearing. It's just compensation and the vesting of title. That's correct, Your Honor. The purposes of the hearing are twofold, but evidence at those hearings are only submitted for the purposes of showing that we have the minimum standards needed in the statute for a quick take, and we also have to put on just compensation evidence so that the court can say, here's the preliminary compensation for the vesting of title that I'm going to order. That is correct. Two things happened in that case, but really the only evidence that any defendant would bring in would be possibly the fact that just compensation at this early stage was not properly calculated. Did you also indicate that on the question of vesting of title, the opportunity to challenge that particular request would arise in some future hearing? No, Your Honor. That's not correct. I apologize if I misspoke. No, it's probably me just not following. Yeah, eminent domain is a completely unusual legal animal, but the motion for immediate vesting of title gives us the State of Illinois immediate title to this property so they can begin the process of doing the rote work. And then later on, there's eventually a final determination of compensation. And between those two periods of time, the defendants in an eminent domain case are allowed to bring in appraisers, other engineers who might contest the validity of the plans that the State of Illinois has come up with for that partial. And they may say, you're taking too much of my land, more than you need. They have the ability to contest that in the future. And so then the court may say, you're right. You tried to take more ground than is necessary for a public purpose, so I'm not going to let you have everything that you had requested originally. But my point was there that that's not the purpose of the quick take hearing, to scrutinize the plans. Opposing counsel mentions that we didn't have time to, you know, come up with an argument as to whether this was a proper taking or not. And I'm saying that that's not the purpose of the quick take hearing at this early stage. Okay, thanks for the clarification. So just in conclusion, Your Honors, I think the State of Illinois has satisfied the eminent domain statute in that they did provide the proper statutory requirements for the motion for immediate vesting of title. They did state that a formally adopted schedule or plan had been adopted by the plaintiff, and it was contained in the motion, calendar year 2017, for improvements to Brighton Bunker Hill Road. And we think that the attachments that were attached to the motion also supplement that and were sufficient to meet the statutory requirements. Okay, thank you, Mr. Tinkman. Any rebuttal? To be clear, I agree with my opposing counsel that the purpose of that hearing on the motion for quick take, for the motion of vesting of title pursuant to the Quick Take Act, the statute, is to address whether or not the condemning authorities met the minimum standards for quick take. I mean, that's why I'm here, is that I claim that the statute requires certain minimum standards, and the State failed to comply with them. I think as a matter of interpretation and understanding the public policy behind it, it's helpful to know why the General Assembly passed that statute, and I believe I articulated that. I won't repeat it. But I'm not pretending to argue about compensation or whether or not it was, they're seeking to overburden my client's property with either fee interest or an easement interest. That's going to be argued later. But my argument is only that I claim that the State did not meet the minimum standards for quick take. My opposing counsel has argued that in this four-paragraph, four-sentence motion, that he believes that the State has complied with the statute. I will just simply say that I.D.O.T. is saying that this is just a permanent easement. It's not even going to be toward the actual railroad project. I tell you, when the person reads this motion, which is the only thing they have going into that hearing, I do not believe that it's clear what's going on as far as the project relative to Exhibit P2, which is the plat. To me, the way I understood it was the plat was calling for an easement right-of-way over the Bailey's property for use of a roadway because it described an existing right-of-way and a proposed easement line that I believe it says that proposed permanent roadway easement. I believe that they were taking my client's property for a roadway. But it's unclear. No one would know by looking at this motion what the plans are for this project relative to my client's property. And two, and also, the only reference to the project is my client's property is necessary for the construction and improvement of FAS 736. That's it. I have no idea what FAS 736. More importantly, my client doesn't know what reference to FAS 736. So when a person or a landowner is served with papers, they would have no idea what the project entails or what it encompasses, particularly relative to their own property. And I don't believe the plat helps illuminate those issues whatsoever. And finally, as it relates to the scheduling, I have to admit that when I read Paragraph 1, which says the construction, the proposed improvement will take place in calendar year 2017, again, I don't know what the project is. But I read this to mean that the project will commence in 2017 and be included sometime in the future. I believe that the language that the IDOT's referring to is ambiguous. Thank you, Your Honor. Thank you, Your Honor. Yeah. Thanks to both of you. The case is submitted and the court stands in recess.